## FLORIDA REAL ESTATE COMM., et al v. CRAIG-SHIELDS, et al.

Real Estate Commission.
October 24, 1951.

———•———

W. H. Poe, George B. Carter and Gaylord C. Kenyon, all of Orlando, for plaintiffs.

Joseph A. Perkins, Miami, for defendants Craig-Shields Realty, Inc. and T. Larry Shields.

Franks & Gordon, Miami, for defendants R. L. Morton and Estelle C. Meyer.

Chairman O. P. SWOPE, Commissioner FRANK A. LEE and Commissioner LELAND JORDAN participated in the hearings and the disposition of the case.

BY THE COMMISSION.

This case came before the commission at its regular monthly meeting on October 8, 1951 at the executive offices of the

commission in Orlando, and after consideration of the pleadings, the examiner's report of the evidence and the argument of counsel, the commission finds:

On October 2, 1950 and at all other times pertaining to the transactions herein considered defendant Craig-Shields Realty, Inc., a corporation (hereinafter referred to as "Craig-Shields") was registered as a real estate broker with its registered place of business at 133 N. E. 3rd Ave., Miami, with a registered branch office at 2255 Coral Way, Miami. Defendant J. Larry Shields was registered as an active broker and president of the corporation, with his office at 133 N. E. 3rd Ave., Miami. Defendants R. L. Morton and Estelle C. Meyer were registered as real estate salesmen and employed by Craig-Shields. Morton was manager of the Coral Way branch office.

On October 2, 1950 (dates hereinafter mentioned are all in 1950) Craig-Shields had listed with it for selling certain real estate in Miami described as lot 1, block 3, Carolina Heights, known as 500 S. W. 29th Court. On that day Estelle C. Meyer obtained from Abraham and Rose Manison, husband and wife, a written offer to purchase the property for $17,750, receiving with the offer a check from Mr. and Mrs. Manison for $1,775 payable to Craig-Shields as an earnest money deposit. Craig-Shields cashed the check.

Between 7 and 8 P. M. on October 2 Estelle Meyer accompanied by Morton, went to the home of the seller of the property, Mrs. Sally Kravitz, and submitted the Manison offer. Mrs. Kravitz telephoned her husband, who requested Morton to read him the offer over the telephone. After the offer had been read to him, Kravitz instructed his wife not to accept the offer as submitted, but to demand 6% interest on the second mortgage provided for in the offer to purchase and have it stipulated that the deed would not be recorded until December 15, the deed meanwhile to be held in escrow by an attorney selected by the seller.

When defendants Meyer and Morton were advised of the requirements specified by the seller's husband, Estelle Meyer, with the aid, assistance and approval of Morton, materially altered the written offer to purchase made by the Manisons by changing the interest rate in the provision for the second mortgage from 5% to 6%, and by adding the following clause by writing same into the written offer to purchase: "It is further understood and agreed that the deed is not to be recorded until

December 15, 1950 and is to be held in escrow by the attorney selected by the seller."

After these material alterations were made by Estelle Meyer with the aid, assistance and approval of Morton, Mrs. Sally Kravitz accepted the offer in writing.

In this proceeding Morton attempted to justify the alterations by saying that Mr. and Mrs. Manison had an aside discussion about the interest they would be willing to pay on the second mortgage and after discussion Mr. Manison told Morton and Meyer: "I want that property, and if you cannot get it for 5% I will pay 6%."

Mr. and Mrs. Manison denied that they, or either of them, had expressed any willingness to pay 6% interest. Assuming, however, that Manison did tell Morton and Meyer that he would pay 6% interest, that did not constitute adequate authority for the insertion of the clause that the deed would be held in escrow by an attorney selected by the seller until December 15. The Manisons' offer stipulated they were to have "possession upon closing." It follows that Meyer and Morton made material alterations in the offer to purchase without the authority of the purchasers.

On October 3 or shortly thereafter the Manisons conferred with their attorney about the transaction and about that time Morton, manager of the Coral Way office of Craig-Shields, referred the matter to the main office for further handling.

On October 4, two days after the execution of the offer and its acceptance as altered, Morton, a Florida notary public, without the offer and acceptance (which became in form an agreement of sale) being in fact acknowledged — and without acknowledgment certificate being authorized by the seller and without the seller's knowledge — placed on the sale agreement an acknowledgment of the execution thereof. On the same day he filed the agreement in the office of the clerk of the circuit court for recording — for the purpose of collecting a commission or to coerce the payment of money to Craig-Shields — and by so doing he violated paragraph (k) of subsection (1) of section 475.42, F. S. A.

After the seller, Sally Kravitz, declined to accept the actual offer made by the Manisons and the Manisons were so advised, the Manisons repeatedly demanded a return of their $1,775 deposit, but their demands were always rejected.

On or before October 14 defendant J. Larry Shields became fully advised of the details of the transaction set forth above. Nevertheless he declined for himself and as president of Craig-Shields to return the deposit to the Manisons, while at the same time admitting that the Manisons were not in default and failure to consumate the deal was no fault of theirs.

After considerable time and continuous refusal to return the deposit to the Manisons, on November 15 Craig-Shields by a check drawn by Larry Shields returned $1,425 of the deposit to the Manisons, but retained the $350 balance — and still retains it. Craig-Shields, acting through Larry Shields, exacted of the Manisons a written release of further liability before returning the $1,425 to the Manisons. By declining to refund the $1,775 deposit to the Manisons and then later refunding only $1,425, defendant J. Larry Shields and Craig-Shields violated paragraph (c) of subsection (1) of section 475.25, F. S. A.

The registration of the defendant Estelle C. Meyer should be suspended under count 1 of the information for 3 months.

Defendant Morton was manager of the branch office and should have known better than to aid, assist or approve of Estelle C. Meyer making the material alterations in the offer to purchase, and for his conduct in that connection he should be suspended under count 2 for 6 months. For placing the certificate of acknowledgment on the sale agreement without the acknowledgment and authorization of the seller he should be suspended under count 3 for 6 months. For recording the sale agreement without authority to do so from the seller — for the purpose of collecting a commission or to coerce the payment of money to Craig-Shields — he should be suspended under count 4 for 6 months.

The registration of J. Larry Shields should be suspended under count 5 for a period of one year because of his conduct as broker in failing to make reasonable efforts to rectify the wrongs done by Meyer and Morton, and, as an active broker registered with Craig-Shields and president of the corporation, rejecting the claims and demands of the Manisons for a refund of their deposit until November 15 and then refusing to pay $350 thereof.

The registration of Craig-Shields Realty, Inc. should be suspended under count 5 for a period of one year for its failure and refusal to return the $1,775 deposit before November 15

and then returning only $1,425, and the suspension should continue beyond one year until such time as the $350 balance of the deposit is paid to the Manisons with interest at 6% per annum from October 14, the day its president Larry Shields admitted the sale had collapsed without fault on the part of the purchasers.

It is therefore ordered: 1. The registration of Estelle C. Meyer is suspended under count 1 for 3 months. 2. The registration of R. L. Morton is suspended under count 2 for 6 months, under count 3 for 6 months, and under count 4 for 6 months, the suspensions under counts 2, 3 and 4 to run concurrently. 3. The registration of J. Larry Shields is suspended under count 5 for one year. 4. The registration of Craig-Shields Realty, Inc. is suspended under count 5 for one year and until such time as it shall refund to Abraham and Rose Manison the sum of $350 with interest at 6% per annum from October 14. The periods of suspension herein ordered shall begin to run with the effective date of this order.

---

I certify that I served a copy of the foregoing order on the defendants' attorneys by registered mail on October 24, 1951. M. M. Smith, Jr., secretary.

*Notice to defendants*: This order becomes final, unless appealed, 30 days after the date of mailing of a copy of the order. See sections 475.31 (3) and 475.35 (1) and 475.40, F. S. A.